**Harley D. WERLEY, Appellant,**

**v.**

**UNITED SERVICES AUTOMOBILE AS-SOCIATION, Appellee.**

**UNITED SERVICES AUTOMOBILE AS-SOCIATION, Cross-Appellant,**

**v.**

**Harley D. WERLEY, Cross-Appellee.**

**Nos. 1454, 1455.**

Supreme Court of Alaska.

June 12, 1972.

Bruce E. Gagnon and Joseph L. Young, of Atkinson, Conway, Young & Bell, Anchorage, for appellant-cross-appellee Werley.

Catherine S. Krendl and Murphy L. Clark, of Hughes, Thorsness, Lowe, Gantz & Clark, Anchorage, for appellee-cross-appellant, United Services.

Before BONEY, C. J., and RABINOWITZ and CONNOR, JJ.

CONNOR, Justice.

In this appeal we are called upon to interpret the meaning of certain "other insurance" clauses contained in three identical insurance policies. Through coincidence the policies were issued by the same company. We must determine what effect the "other insurance" clauses should have upon the uninsured motorist coverage provided by each policy.

At issue in this case is whether appellant Werley, a passenger in his own car who had already recovered under the uninsured motorist protection of his own automobile insurance policy, is entitled to recover under identical provisions of two policies which extend coverage to him through the driver of his car. The identical "other insurance" provisions in each of the three policies would on their face prevent recovery. This case squarely presents the issue of whether Alaska should adopt the Oregon or *"Lamb-Weston"* [1] rule of insurance law concerning conflicting "other insurance" clauses.

The insurer, who prevailed below, cross-appeals on only one issue: whether the $400 award of attorney's fees was inadequate.

The facts are relatively simple and, for the purpose of the motion for summary judgment, were stipulated between the parties. No issue of fact remains. The only question is which party is entitled to summary judgment as a matter of law.

Appellant owned and was a passenger in an automobile driven by a Mrs. Pope. A collision occurred with a second car driven by an uninsured motorist, assumed to be negligent. It is agreed that Mrs. Pope was not negligent. Appellee, United Services Automobile Association, had issued three identical automobile liability policies with uninsured motorist limits of $15,000 per person and $30,000 per accident, one to plaintiff and two to the Popes.[2] Appellant recovered $15,000 on his policy and now seeks an additional $15,000 on each of the two Pope policies. It is agreed that appellant's damages for the injuries received equal or exceed combined policy limits.

U.S.A.A. refused payment on both Pope policies because of two "other insurance" clauses applicable to uninsured motorist coverage, found in all three policies:

> *"Other Insurance:* With respect to bodily injury to an insured while oc-

cupying an automobile not owned by the named insured, the insurance under Part IV shall apply only as excess insurance over any other similar insurance available to such insured and applicable to such automobile as primary insurance, and this insurance shall then apply only in the amount by which the limit of liability for this coverage exceeds the applicable limit of liability of such other insurance.

"Except as provided in the foregoing paragraph, if the insured has other similar insurance available to him and applicable to the accident, the damages shall be deemed not to exceed the higher of the applicable limits of liability of this insurance and such other insurance, and the company shall not be liable for a greater proportion of any loss to which this Coverage applies than the limit of liability hereunder bears to the sum of the applicable limits of liability of this insurance and such other insurance."

In the settlement on his policy, plaintiff reserved the right to sue on the Pope policies. After suit was brought, both parties moved for summary judgment, appellee raising several additional grounds irrelevant to this appeal. Construing the above provisions, the superior court held that the clauses,

> "when read as a whole, are not conflicting. (Miller v. Allstate Ins. Co., [66 Wash.2d 871] 405 P.2d 712 [Wash. 1965]; Russell v. Paulson, [18 Utah 2d 157] 417 P.2d 658 [Utah 1966]). Therefore, the clauses control the present situation and an additional recovery under the policies must be denied."

I

Appellant asserts that the "other insurance" clause conflicts with the statutory

---

1. Lamb-Weston, Inc. v. Oregon Auto. Ins. Co., 219 Or. 110, 341 P.2d 110, reh. den., 219 Or. 110, 346 P.2d 643 (1959).

2. Mr. and Mrs. Pope had one policy for each of their two cars.

minimum coverage under AS 21.89.020,[3] the uninsured motorist provisions in the Alaska Statutes, and should be disregarded by this court. While recognizing that the policy was issued before the effective date of AS 21.89.020, appellant urges that, even if we cannot apply AS 21.89.020, the 1966 amendment to AS 28.20.440 should be construed to have required all automobile policies issued after January 1, 1967, to provide minimum uninsured motorist coverage of $15,000 per person and $30,000 per accident.

■ In Hart v. National Indemnity Co.[4] we held that the provisions of AS 28.-20.440 are mandatory only if a policy is certified as proof of financial responsibility or is required by law due to a person's previously having been in an accident. We find no reason to alter this ruling in light of the 1966 amendment and find it applicable to the instant case where no certification of financial responsibility was required.[5]

In conjunction with his claim that the "other insurance" clause is repugnant to the mandatory minimum coverage provi-

sion of our uninsured motorist statute, appellant argues that, by virtue of representations made at the time the policy was issued,[6] appellee should be either estopped to deny applicability of the statute or that we should hold that the representation incorporated the statute into the policy by reference.

■ However, even if we are to assume the applicability of AS 21.89.020 to this case, the provision in the statute allowing an individual to reject uninsured motorist coverage removes any conflict between the "other insurance" clause and the uninsured motorist statute. Because the statute permits rejection of uninsured motorist coverage, and appellee's representation included the privilege of rejecting such coverage, a policy provision which "waives" coverage in the event the insured has other available insurance does not directly contravene the statute. Therefore, we decide this issue in favor of the insurance carrier.

II

Appellant argues that we should disregard the "other insurance" clauses and

---

3. AS 21.89.020 provides:
   "(a) An automobile liability policy which insures an owner or operator of a motor vehicle against loss resulting from his liability for bodily injury or death, or for property injury or destruction, or both, which is sold in this state after January 1, 1969, by an insurance carrier authorized to transact business in this state, shall contain limits in at least the amount prescribed for a motor vehicle liability policy in AS 28.20.440(b) (2), and meet the requirements of AS 28.20.440(b) (3) unless waived as provided in that paragraph.
   "(b) This section may not be construed to apply only to automobile liability policies obtained to satisfy a requirement of AS 28.20."

4. 422 P.2d 1015 (Alaska 1967).

5. The 1966 amendment required that policies issued under the financial responsibility act include coverage for accidents in which uninsured motorists were involved. This change is found in § 440(b) (3). However, there has been no change in that part of AS 28.20.440(a) making the

policy provisions mandatory only if it is certified as proof of financial responsibility or is required by law due to an individual having been involved in an accident. The *Hart* decision was based on the limiting effect of § 440(a), the unchanged portion of this statute. See Hart v. National Indem. Co., 422 P.2d at 1021.

6. Plaintiff's Exhibit A consisting of a page supplied to policy holders entitled
   "UNINSURED MOTORISTS COVERAGE
   General Information"
   states:
   "UNINSURED MOTORISTS COVERAGE IS REQUIRED BY LAW FOR POLICIES WRITTEN FOR:
   . . .
   ALASKA, ARIZONA, ARKANSAS, COLORADO, FLORIDA, HAWAII, IDAHO, INDIANA, LOUISIANA, MICHIGAN, MISSISSIPPI, MISSOURI, NEBRASKA, NEVADA, NORTH CAROLINA, OHIO, PENNSYLVANIA, RHODE ISLAND, SOUTH DAKOTA, TEXAS, UTAH, AND WISCONSIN— . . . with right of rejection by the insured".

hold U.S.A.A. liable to the combined policy limits. This argument presents the central issues in this appeal which are: first, whether the "other insurance" clauses create an ambiguity that cannot be resolved by logic or standards of interpretation commonly used by the courts in construing insurance policy provisions; and, second, if we cannot harmonize the clauses through interpretation, what method should be employed to resolve the conflict.

■ Appellee asserts that, from a reading of the language of the policy, it is clear that appellant's policy was intended to provide primary coverage. From this it would follow that the "other insurance" clauses in the two Pope policies would bar further recovery by appellant. Where the terms of the policy are clear and unambiguous, we will, of course, give effect to the language.[7] However, we must first determine whether appellant's policy, by its terms, must be regarded as secondary.

Most, perhaps all, automobile liability insurance policies contain "other insurance" clauses providing that in the event of other *applicable* insurance, (1) this insurance shall not apply (an "escape" clause), or (2) that this insurance shall be excess only (an "excess" clause), or (3) there shall be a proration of the loss (a "proration" clause). Combinations of these are also found.[8]

U.S.A.A. argues that the prorata clause of the Werley policy provides that he, as owner of the automobile involved in the accident, can recover to the policy limit unless there is "other insurance" *available* to him. In U.S.A.A.'s view the Pope policies are available to Werley only for those amounts that exceed the Werley policy limit. U.S.A.A. contends that the Pope policies were *not available* to Werley for amounts that do not exceed the $15,000 policy limit of the Werley policy. Further, U.S.A.A. asserts that the clauses are clear

and hence do not conflict as to amounts in excess of $15,000. U.S.A.A. contends that once the Werley policy had paid to its $15,000 limit, none of the policies could pay more because the excess clauses of the Pope policies apply only to the amount by which the limit of liability of their coverage exceeds the limit of liability of the primary policy. It is asserted that there is no liability under the Pope policies because no liability is created under the language of either policy for amounts exceeding $15,000.

Appellant urges another view of the policies. In his analysis the policy clauses are void because each policy attempts to defer liability to the other policies. Werley points out that under paragraph II of his own policy's "other insurance" clause, his recovery on that policy is to be reduced or prorated by other available insurance. Following this language to its logical conclusion, Werley asserts that he is entitled to only $5,000 under his own policy since the two Pope policies are "other insurance" and both have $15,000 limits. However, Werley feels that in looking to the two Pope policies, where he is not the named insured, no recovery is available since under paragraph I of the "other insurance" clause only excess coverage is available. Paragraph I also seeks to label "other insurance" as "primary" insurance. For this reason Werley contends that the label "primary" cannot be affixed to his policy, as it says nothing of being the primary policy and affirmatively states that it is prorata insurance. From the foregoing Werley concludes that a problem of circularity arises, with each policy deferring to the other two, there being no logical way to resolve the conflict or determine which policy should be given priority.

The original reason for "other insurance" clauses was to prevent overinsurance and double recovery under property and

---

**7.** *Cf.* Pepsi Cola Bottling Co. v. New Hampshire Ins. Co., 433 P.2d 670 (Alaska 1967).

**8.** Note, Automobile Liability Insurance— Effect of Double Coverage and "Other Insurance" Clauses, 38 Minn.L.Rev. 838, 840 (1954).

fire insurance policies. But since there is a greatly diminished risk of fraudulent claims under an automobile liability insurance policy, this original purpose of "other insurance" clauses is of only slight importance.

> "It takes far less cunning to burn one's house or barn in order to collect in full from several insurers than it does to conspire with another that he purchase automobile liability and property damage insurance from several insurers and then collide with the first party in such a way as to do damage to both that party's car and person and thus effect a multiple recovery. The possibility of serious injury or death resulting from such conspiracies should prove a powerful deterrent." [9]

Since there is less temptation to deliberately and fraudulently overinsure against automobile liability, these "other insurance" clauses "function solely to reduce or eliminate the insurer's loss in the event of concurrent coverage of the same risk." [10]

Traditionally most courts have reconciled such conflicting policy language by determining which policy is "primary" and then assigning to that policy the entire loss. Several methods of determining this are: (1) the first policy purchased is "primary"; (2) the policy giving the most specific coverage is "primary"; (3) the policy covering the primary tort-feasor is "primary"; (4) the owner's policy is primary and the driver's is secondary.[11]

A rapidly growing number of jurisdictions have followed the lead of Oregon and abandoned the traditional approach.[12] This new doctrine had its genesis in Oregon Auto Ins. Co. v. United States Fidelity & Guaranty Co., 195 F.2d 958 (9th Cir. 1952), which construed Oregon law absent a state decision on point. Prorata-excess and prorata-escape clauses were contained in the discussed policies. Noting the confusion in case law, the court regarded the reasoning exemplified in the case law as circular. Results were arbitrary and without reason, often depending upon which policy was read first. It was like determining the priority between the chicken and the egg. Since the two clauses were indistinguishable in meaning and intent, the court could not choose between them. If neither policy had contained its "other insurance" clause, under conventional insurance law principles the loss would have been prorated up to the respective policy limits. Therefore, the court held both clauses mutually repugnant and disregarded them. If the loss were less than the policy limits, it should be prorated according to the limits of both policies. If not, both policies would be effective up to their limits.

---

9. Comment, "Other Insurance" Clauses: The Lamb-Weston Doctrine, 47 Ore.L. Rev. 430 (1968).

10. Note, Concurrent Coverage in Automobile Liability Insurance, 65 Colum.L.Rev. 319, 320 (1965).

11. Henderson v. Selective Ins. Co., 369 F.2d 143 (6th Cir. 1966); Carolina Cas. Ins. Co. v. Pennsylvania Threshermen & Farmers' Mut. Cas. Ins. Co., 327 F.2d 324 (3d Cir. 1964). See New Amsterdam Cas. Co. v. Fidelity & Cas. Co., 400 F.2d 237 (9th Cir. 1968); United Services Auto. Ass'n v. Russom, 241 F.2d 296 (5th Cir. 1957).

12. Globe Indem. Co. v. Capital Ins. & Sur. Co., 352 F.2d 236 (9th Cir. 1965) (Guam); Allstate Ins. Co. v. American Underwriters, Inc., 312 F.Supp. 1386 (N.D.Ind.1970); Vance Trucking Co. v. Canal Ins. Co., 251 F.Supp. 93 (D.S.C. 1966), aff'd 395 F.2d 391 (4th Cir.), cert. denied, 393 U.S. 845, 89 S.Ct. 129, 21 L.Ed.2d 116 (1968); Continental Cas. Co. v. St. Paul Mercury Fire & Marine Ins. Co., 163 F.Supp. 325 (S.D.Fla. 1958); Continental Cas. Co. v. New Amsterdam Cas. Co., 28 Ill.App.2d 489, 171 N.E.2d 406 (1960); Woodrich Constr. Co. v. Indemnity Ins. Co., 252 Minn. 86, 89 N.W.2d 412 (1958); Arditi v. Massachusetts Bonding and Ins. Co., 315 S.W. 2d 736 (Mo.1958); Curran v. State Auto. Mut. Ins. Co., 25 Ohio St.2d 33, 266 N.E.2d 566 (1971) (alternative holding); Sparling v. Allstate Ins. Co., 249 Or. 471, 439 P.2d 616 (1968); Liberty Mut. Ins. Co. v. Truck Ins. Exch., 245 Or. 30, 420 P.2d 66 (1966); Firemen's Ins. Co. v. St. Paul Fire and Marine Ins. Co., 243 Or. 10, 411 P.2d 271 (1966).

This rule was adopted by the Oregon Supreme Court in Lamb-Weston, Inc. v. Oregon Auto. Ins. Co., 219 Or. 110, 341 P. 2d 110, reh. denied, 219 Or. 110, 346 P.2d 643 (1959). One policy contained an excess clause while the other contained a prorata clause. But this was not important. The court found it as impossible to call either policy primary as to capture a "will o' the wisp".[13] It recognized the "absurdity of attempting to assume that where conflicting 'other insurance' provisions exist by reason of overlapping coverages of the same occurrence the provisions of one policy must yield to the provisions of the other."[14] Instead, citing Oregon Auto. Ins. Co., supra, it held

> "The 'other insurance' clauses of all policies are but methods used by insurers to limit their liability, whether using language that relieves them from all liability (usually referred to as an 'escape clause') or that used by St. Paul [Ins. Co.] (usually referred to as an 'excess clause') or that used by Oregon [Ins. Co.] (usually referred to as a 'prorata clause'). In our opinion, whether one policy uses one clause or another, when any come in conflict with the 'other insurance' clause of another insurer, regardless of the nature of the clause, they are in fact repugnant and each should be rejected in toto."[15]

Since the loss in *Lamb-Weston* was less than the total policy limits, it was prorated.

This doctrine has been consistently followed in Oregon. Several cases are of particular importance. Smith v. Pacific Auto. Ins. Co., 240 Or. 167, 400 P.2d 512 (1965), is quite similar to the case at bar. A passenger in a car owned by a third person was injured by an uninsured motorist.

His injuries far exceeded all policy limits. He settled with the owner's insurer, then sued his own under its uninsured motorist clause. The owner's policy had a prorata clause and the passenger's had an "excess" clause. The court rejected the insurer's traditional argument which would give effect to the "excess" clause; instead it followed *Lamb-Weston*. Holding that neither policy was "primary", it rejected both clauses in toto. The court also specifically rejected the insurer's argument that plaintiff should not be permitted to "stack" benefits under several policies. The court saw nothing wrong with stacking benefits. It was persuaded by the argument that both insureds had purchased policies directly benefiting the passenger. Since both companies had collected premiums for this protection, there could be no injustice in permitting recovery to the limits of both policies.[16]

Recently the United States district court in Alaska construed two clauses identical to Paragraph I of U.S.A.A.'s in Kackman v. Continental Ins. Co., 319 F.Supp. 540 (D.Alaska 1970). This too was a case concerning two policies, each of which provided uninsured motorist coverage. In the absence of a determination by this court, the United States district court followed the *Smith* case, supra, under what it believed to be the better and more reasonable rule. It found the clauses to be circular and mutually repugnant. It held that they should be disregarded, and that the insured should be permitted to recover for his injuries up to the full limits of both policies.

U.S.A.A. urges rejection of *Lamb-Weston* on the ground that it would entitle appellant to a windfall. It is argued that because he did not himself pay

---

13. 341 P.2d at 116.

14. *Id.* at 118–119.

15. *Id.* at 119.

16. In Firemen's Ins. Co. v. St. Paul Fire & Marine Ins. Co., 243 Or. 10, 411 P.2d 271, 274 (1966), the court observed:
    "This court believes it is good public policy not to put an injured plaintiff,
    
    or a defendant who is fortunate enough to have duplicate coverage, in a position where there is any possibility one insurer can say, 'After you, my dear Alphonse!' while the other says, 'Oh, no, after you, my dear Gaston.' They must walk arm in arm through the door of responsibility."

premiums on the Pope policies he should be denied recovery. We find the argument unpersuasive. First, there were three separate premiums paid. The fact that Werley only paid one of these does not make recovery on the other two a windfall, as he was clearly an insured beneficiary of the uninsured motorist coverage in the Pope policies.[17] Second, the fact that Werley had a policy for $15,000 per person and $30,000 per accident does not manifest an intent on his part to limit his recovery from injury by an uninsured motorist in the event that other policies covering an accident could also benefit him. Third, the assertion of U.S.A.A. that Werley would recover three times as much as he would have received had he been hit by an insured motorist is untenable. It is implicit in this assertion that the hypothetical insured motorist would have been insured only for the minimal amount provided in the uninsured motorist coverage of the Werley and Pope policies. This assumption is not required and we cannot accept it. What Werley would have received from an insured motorist is purely a matter of speculation.

■ We hold that *Lamb-Weston* is the better rule of law and should be applied in all cases where conflicting "other insurance" clauses of the excess, prorata or escape types are found. We believe this to be the better and more reasonable rule on several grounds:

"It does not arbitrarily pick one of the conflicting clauses and give effect to it; it does not deprive the insured of any coverage; it is not prejudicial in giving a windfall to one insurer at the expense of another; it does not encourage litigation between insurers; it does not delay settlements. On the other hand, it does

enable underwriters to predict the losses of the insurers more accurately; it does preclude the use of illogical rules developed by the courts (e. g., first in time, specific v. general and primary tort-feasor doctrines); and it does give a basis for uniformity of result. In addition, prorating the loss among all insurers is a rule that can be applied regardless of the number of insurers involved and regardless of the type of conflicts that are created by the 'other insurance' clauses. Finally, the rule is simpler, more convenient and easier to apply than the majority rule." [18]

We cannot accept U.S.A.A.'s assertions that *Lamb-Weston* is undesirable because it has generated obstructionist litigation in other jurisdictions or that appellant will receive a windfall because the premium collected for the uninsured motorist coverage was small in amount. Any obstructionist litigation following adoption of the doctrine would merely represent an informed litigative choice by those members of the insurance industry who sought to get out from under the principle. When a jurisdiction has formulated a settled rule or principle, each person resisting its application must determine for himself whether the merits of his case warrant an exception to that principle or rule. As far as the small premium is concerned, the issuance of a policy of insurance is always a risk taking venture. Calculation of the premium to be charged for that risk is a matter within the competency of the insurance carrier.

In light of the decision for appellant, we find it unnecessary to decide whether the attorney's fees awarded to appellee were inadequate. Since appellee can no longer

17. Under the Pope policies an "Insured" is defined to include, under Part IV, the named insured and any relative, and under sub-paragraph (b), "any other person while occupying an insured automobile." An "insured automobile" is defined to include a "non-owned automobile while being operated by the named insured."

18. Note, Conflicts Between "Other Insurance" Clauses in Automobile Liability Insurance Policies, 20 Hastings L.J., 1292, 1304 (1969) (footnotes omitted).

be regarded as the prevailing party, the point is moot.

We reverse and remand with instructions to enter judgment for appellant.

Reversed and remanded.

ERWIN and BOOCHEVER, JJ., not participating.