**INDIANA INSURANCE CO.,**
**Defendant-Appellant,**

v.

**FEDERATED MUTUAL INSURANCE**
**CO., Plaintiff-Appellee.**

**No. 1–480A101.**

Court of Appeals of Indiana,
First District.

Jan. 20, 1981.

Rehearing Denied Feb. 19, 1981.

Philip A. Whistler, William L. Skees, Ice, Miller, Donadio & Ryan, Indianapolis, for defendant-appellant.

Richard L. Fairchild, Stewart, Irwin, Gilliom, Fuller & Meyer, Indianapolis, for plaintiff-appellee.

NEAL, Presiding Judge.

## STATEMENT OF THE CASE

Plaintiff-appellee Federated Mutual Insurance Company (Federated) filed an action against defendant-appellant Indiana Insurance Company (Indiana) seeking a declaratory judgment as to each insurer's respective liability upon a $100,000 settlement. The cause was submitted to the trial court on stipulated facts and supporting briefs. The trial court entered its findings of fact and conclusions of law, and adjudged both insurers liable for an equal amount of the settlement.

## STATEMENT OF THE FACTS

The facts most favorable to the judgment are as follows: On April 21, 1973, Terry Smith (Smith), while on the job for his employer, Howard and Hannon, Inc. (Hannon), test drove a 1962 International truck-tractor (truck) which was owned and offered for sale by East Side Supply & Service, Inc. (East Side). During the test drive, Smith was involved in an accident with a motorcycle driven by Richard Clough (Clough) who, as a result of his injuries, filed a lawsuit against East Side and Hannon. At the time of the accident, Hannon was insured under a comprehensive liability policy issued by Federated for an annual premium cost of $2,684. Federated's policy limits for bodily injury were $100,000 per person and $300,000 per occurrence. Also at the time of the accident East Side, the owner of the truck, was insured under a comprehensive liability and garage insurance policy issued by Indiana for an annual premium cost of $2,644. Likewise, Indiana's policy limits for bodily injury were $100,000 per person and $300,000 per occurrence. Indiana and Federated settled out of court with Clough for $100,000, but both insurers reserved the right to contest their respective liability under the terms of their policies. Attached to Indiana's and Federated's insurance policies were "other insurance" clause provisions. The "other insurance" provision, commonly called an excess clause, in Federated's policy stated:

"Additional Provisions

Excess Insurance—Hired and Nonowned Automobiles

With respect to a hired automobile or a non-owned automobile, this insurance shall be excess insurance over any other valid and collectible insurance available to the insured."

Indiana's "other insurance" provision, commonly called an escape clause, stated:

"Limited Coverage for Certain Insureds

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following: GARAGE INSURANCE.

In consideration of the reduced rate of the premium made applicable to the garage liability insurance, it is agreed that garage customers are not insureds with respect to the automobile hazard except in accordance with the following additional provisions:

1. If there is other valid and collectible insurance, whether primary, excess or contingent, available to the garage customer and the limits of such insurance are sufficient to pay damages up to the amount of the applicable financial responsibility limit, no damages are collectible under this policy.

2. If there is other valid and collectible insurance available to the garage customer, whether primary, excess or contingent, and the limits of such insurance are insufficient to pay damages up to the amount of the applicable financial responsibility limit, then this insurance shall apply to the excess of damages up to such limit.

3. If there is no other valid and collectible insurance, whether primary, excess or contingent, available to the garage customer, this insurance shall apply but the amount of damages payable under this policy shall not exceed the applicable financial responsibility limit.

4. As used in this endorsement:

'Applicable financial responsibility limit' refers to the applicable limit of the financial responsibility law of the state where the automobile is principally garaged.

'Garage customer' means any person other than

(1) An employee, director, stockholder, partner, or member of the named insured, or a resident of the same household as the named insured, such employee, director, stockholder, partner or member; or

(2) Any other person or organization named in item 2b of the declarations as to (b) of the declarations and any person while using an automobile furnished to such named person or organization."

At the close of the evidence the trial court issued findings of fact and conclusions of law which may be summarized as follows:

1) Indiana contends Smith is a garage customer as is defined in its escape clause which limits its liability to the State of Indiana's financial responsibility limit of $15,000;

2) Indiana contends Federated's coverage is sufficient to pay damages up to $15,000 so that Smith is not an insured under Indiana's policy;

3) Federated contends its excess clause is mutually repugnant to Indiana's escape clause and so Indiana is either primarily liable for the whole settlement or should share primary liability with it so that each insurer pays one-half of the $100,000 settlement;

4) Since Smith was driving a non-owned automobile under Federated's policy, its coverage amounted to "excess insurance over any other valid and collectible insurance available to the insured";

5) Absent the two insurers' excess and escape clauses, the method of apportionment of the $100,000 settlement under their policies is virtually the same where "other insurance" exists;

6) The "Limited Coverage for Certain Insureds" endorsement (escape clause) of Indiana's policy and the excess insurance for non-owned automobiles of Federated's policy (excess clause) are in irreconcilable conflict and mutually repugnant;

7) Because their "other insurance" clauses irreconcilably conflict, they are to be disregarded and the settlement should be prorated in accordance with the primary bodily injury limits of Indiana's and Federated's policies;

8) Under the authority of *Indiana Insurance Company v. American Underwriter's, Inc.*, (1973) 261 Ind. 401, 304 N.E.2d 783, the court finds Indiana's escape clause and Federated's excess clause mu-

tually repugnant, and the clauses must be disregarded; and

9) Since the limit of liability is the same under each insurer's policy, Federated and Indiana are each liable for $50,000 of the $100,000 settlement.

## ISSUES

Indiana states the issues as follows:

"I) Whether a provision in a garage owner's insurance policy which provides, for a reduced rate of premium, that garage customers who have other insurance of a specified type and amount are not 'insureds,' should be given effect when a garage customer is covered by another policy which provides coverage of the specified type and amount.

II) If the 'other insurance' provisions of the two policies are mutually repugnant and the garage customer is found to be covered under the garage owner's policy, whether the lower policy limits for garage customers in the garage owner's policy apply for purposes of prorating the loss between the two insurers."

## DISCUSSION AND DECISION

### Issue I. Liability

We will affirm the trial court's judgment if it is sustainable on any legal theory. *Rees v. Heyser*, (1980) Ind.App., 404 N.E.2d 1183. When reviewing a case in which the judge has rendered findings of fact, this court will not set aside the judgment unless it is clearly erroneous. *Lawrence v. Ball State University Board of Trustees*, (1980) Ind.App., 400 N.E.2d 179; Ind. Rules of Procedure, Trial Rule 52. We will accept the findings of fact made by the trial court if they are supported by evidence of probative value. In making this determination, we will construe the findings together as well as liberally view them in support of the

judgment. *Evansville-Vanderburgh School Corporation v. Roberts*, (1980) Ind., 405 N.E.2d 895.

Indiana first argues that Smith is not an insured by the terms of its insurance contract with East Side, and therefore, no portion of Clough's $100,000 settlement is collectible under its policy. In the alternative, Indiana contends that Smith was a garage customer as defined by its escape clause provisions, and, as a garage customer, Smith cannot, under any circumstances, collect more than that amount established by the State of Indiana's financial responsibility limit.[1]

Before addressing Indiana's first argument, a brief review of "other insurance" clauses is in order. "Other insurance" clauses appear within insurance contracts in three basic forms: (1) pro rata clauses which limit an insurer's liability for a loss to a specified share or formula for establishing such share; (2) excess clauses which limit an insurer's liability to that amount of loss which exceeds the liability limits of all other valid and collectible insurance; and (3) escape clauses which reduce or eliminate coverage if other insurance is available.[2]

The purpose of "other insurance" provisions in automobile liability insurance policies is to limit or eliminate the liability of an insurer. *Allstate Insurance Company v. American Underwriters, Inc.*, 312 F.Supp. 1386 (N.D.Ind., 1970); *Indiana Insurance Company v. American Underwriters, Inc.*, (1973) 261 Ind. 401, 304 N.E.2d 783; *Werley v. United Services Automobile Association*, (1972) 498 P.2d 112; *Union Insurance Company v. Iowa Hardware Mutual Insurance Company*, (1970) Iowa, 175 N.W.2d 413; *Lamb-Weston, Inc. v. Oregon Automobile Insurance Company*, (1959) 219 Or. 110, 341 P.2d 110; *See generally* Note, *Concurrent Coverage in Automobile Liability Insurance*, 65 Colum.L.Rev. 319 (1965); and *See*

1. Ind.Code 9-2-1-15 in relevant part reads: "Proof of financial responsibility shall mean proof of ability to respond in damages for liability thereafter incurred, arising out of the ownership, maintenance or use of a motor vehicle, in the amount of fifteen thousand dollars

($15,000) because of bodily injury to or death of any one (1) person, ..."

2. *See* Note, *Recent Developments, Resolution of Conflicting "Other Insurance" Clauses: New Developments in Indiana*, 46 Ind.L.Rev. 270 (1970–1971).

*generally* Note, *Recent Developments, Resolution of Conflicting "Other Insurance" Clauses: New Developments in Indiana*, 46 Ind.L.Rev. 270 (1970–1971). When the "other insurance" clause provisions of two insurance policies conflict, many jurisdictions, including Indiana, view these clauses as mutually repugnant, irreconcilable and as presenting a "circular riddle." [3] *Allstate Insurance Company, supra; Indiana Insurance Company, supra; Werley, supra; Union Insurance Company, supra; Graves v. Traders & General Insurance Company*, (1968) 252 La. 709, 214 So.2d 116; *Lamb-Weston, Inc., supra, Oregon Auto. Ins. Co. v. United States Fidelity & Guaranty Co.*, (9th Cir. 1952) 195 F.2d 958. In *Oregon Auto. Ins. Co., supra*, at 960, two insurers sought to avoid primary liability through the use of "other insurance" provisions. The 9th Circuit Court of Appeals found that one insurer's excess clause conflicted with the other insurer's escape clause. As a result, the Federal Court held:

> "In our opinion the *'other insurance'* provisions of the two policies are indistinguishable in meaning and intent. One cannot rationally choose between them. We understand the parties to concede that where neither policy has an 'other insurance' provision, the rule is to hold the two insurers liable to prorate in proportion to the amount of insurance provided by their respective policies. Here, where both policies carry like 'other insurance' provisions, we think must be held mutually repugnant and hence be disregarded. Our conclusion is that such view affords the only rational solution of the dispute in this case. The proration is to be applied in respect both of damages and of the expense of defending the suits." (Footnote omitted; emphasis added.)

The outright rejection of "other insurance" clauses that are found to be mutually repugnant is sometimes referred to as the minority view.[4] Proponents of this view

believe that attempts to interpret insurance contract language by construction of the irreconcilable clauses is wasteful. Indiana case law adopts this viewpoint. *Allstate Insurance Company, supra; Indiana Insurance Company, supra.*

Some jurisdictions, despite the existence of conflicting "other insurance" clauses, choose to construe the language employed by the respective insurers to determine which insurer intended to be primarily liable and which only intended to be liable for the excess. *Zurich General Accident & Liability Ins. Co. v. Clamor*, (7th Cir. 1941) 124 F.2d 717; *Indiana Lumbermens Mutual Insurance Company v. Mitchell*, (7th Cir. 1969) 409 F.2d 392. The majority view that conflicting "other insurance" clauses are reconcilable through interpretation, is founded upon general contract doctrine encouraging parties to contract freely without fear of judicial interference.

Opponents to the majority view contend that judicial construction of irreconcilable "other insurance" clauses only encourages the continuing battle of draftsmanship of still more specific policy terms. 8 Appleman, *Insurance Law & Practice* §§ 4913, 4914. The Iowa Supreme Court, in *Union Insurance Company*, stated:

> "The myriad problems attendant upon 'other insurance' clauses is not new, and the conflicting solutions adopted demonstrate a frustrating judicial attempt to resolve what appears to be *an endless inter-industry semantic battle.*" (Emphasis added.)

175 N.W.2d at 414. In addition, settled principles of equity require that insurance policies be construed liberally in favor of the insured and strictly against the insurer. In its effort to reach a result intended by the parties, the court in *Union Insurance Company, supra*, when confronted by conflicting "other insurance" provisions, said:

---

**3.** In other words, any attempt to resolve liability by reading one insurer's "other insurance" clause with a result that would be opposite to that reached if the second insurer's "other in-

surance" clause were first read creates a "circular riddle."

**4.** *See* 46 Ind.L.Rev., *supra.*

"To solve the problem by picking up one policy, and reading it with a result which would be opposite to that reached if the other policy were first in order, is at best a pseudo-solution in that it only aggravates a circular riddle.

Furthermore, we seriously doubt the capacity of courts to make valid legal determinations of policy intent by measuring actuarial risks and a correspondent allocation of premiums."

175 N.W.2d at 417.

In the case at bar, the trial court found that the "other insurance" clauses in Indiana's and Federated's policies were in irreconcilable conflict and mutually repugnant, and therefore must be disregarded.

In support of its conclusions of law, the trial court cited *Indiana Insurance Company, supra*, in which the Indiana Supreme Court held that where "other insurance" clauses of insurance policies conflict, the clauses will be ignored and each insurer will be liable for a prorated amount of the loss. In its argument, Indiana attempts to distinguish *Indiana Insurance Company, supra*, as primarily standing for the public policy of protecting the insured rather than the insurer. While it is true that the Indiana Supreme Court recognized the widely accepted public policy of protecting premium-paying insureds,[5] the Supreme Court held:

"Both policies, when read separately, appear to afford coverage to the insured. Yet each 'other insurance' provision forces an examination of its opponent. This 'circular riddle' can be resolved by (1) attempting to give effect to one policy provision over the other, or (2) applying mechanical or arbitrary rules hereinbefore discussed, or (3) holding both clauses to be conflicting and mutually repugnant and, therefore, disregarding them. We find the last mentioned alternative to be the most reasonable. This method not only provides indemnification for the insured, but also, through the process of proration, gives effect to the general intent of the insurers."

261 Ind. at 407, 304 N.E.2d 783.

In *Indiana Insurance Company, supra*, our Supreme Court detailed the historical development of the "other insurance" clause which first appeared in fire and personal property insurance policies. In those policies, the purpose of the "other insurance" clause was to prevent insureds from obtaining double coverage which often resulted in deliberate and fraudulent claims of loss. Furthermore, as our Supreme Court recognized, the original purpose of writing "other insurance" clause provisions into policies is lost in the underwriting of automobile liability insurance "where the hazard of self-injury is less likely to occur." 261 Ind. at 404, 304 N.E.2d 783. However, insurers have, at times, made use of escape and excess clauses to reduce or eliminate liability when concurrent automobile insurance coverage exists. *Indiana Insurance Company, supra; Werley, supra; Union Insurance Company, supra;* and *Lamb-Weston, supra.* In *Indiana Insurance Company, supra*, our Supreme Court addressed the

---

**5.** In *Indiana Insurance Company, supra*, at 406–407, 304 N.E.2d 783, the Indiana Supreme Court said:

"The policies at issue have conflicting provisions. In the final analysis, we must be concerned with protecting the insured person. Competing clauses between insurers should not be allowed judicial sanction at the expense of removing the insured's coverage: '. . . The sense of avoidance logic, employed by insurers against each other, when applied against the insured, would lead to a conclusion that the latter, though protected by two policies, actually has none. This would be an unconscionable result. With the issue thus sharply drawn between two or more insurers, the insured is actually left helpless on the sidelines. See *Graves v. Traders & General Insurance Company*, La.App., 200 So.2d 67, 77, aff'd 252 La. 709, 214 So.2d 116, 117–118, and *Federal Ins. Co. v. Atlantic National Ins. Co.*, 25 N.Y.2d 71, 302 N.Y.S.2d 769, 771–772, 250 N.E.2d 193. Furthermore, under any such theory the insured loses benefit of the rule, supra, requiring that policies be construed strictly against the insurer.' 175 N.W.2d at 417–418.

This Court must seek an equitable result preponderating in favor of the insured who has paid premiums for such insurance. At the same time, we must remain conscious that a contract of indemnity does not allow windfall gains nor any recoupment above the damage actually suffered."

issue of the "other insurance" provision and held:

"The insurers draft 'other insurance' provisions for the purpose of reducing their liability when the insured has access to other collectible insurance. Therefore, we can give effect to this purpose by holding that *where 'other insurance' clauses conflict, as in the case at bar, they are to be ignored and each insurer is liable for a prorated amount of the resultant damage not to exceed his policy limits. In such a case, there exists dual* [orig. emphasis] *primary liability.*

In the instant case, if neither policy had contained the 'other insurance' provision, then each insurer would have been liable in a prorated amount up to the respective policy limits. The same reasonable result should be reached where the policy provisions conflict[.]" (Emphasis added.)

261 Ind. at 407–408, 304 N.E.2d 783. The Indiana Supreme Court, in *Indiana Insurance Company, supra*, adopted the rule followed by the Oregon Supreme Court in *Lamb-Weston, supra*, in which that court faced a similar fact situation. In *Lamb-Weston*, two insurance policies contained conflicting excess and pro rata clauses. The Oregon Supreme Court found:

"The 'other insurance' clauses of all policies are but methods used by insurers to limit their liability, whether using language that relieves them from all liability (usually referred to as an 'escape clause') or that used by St. Paul (usually referred to as an 'excess clause') or that used by Oregon (usually referred to as a 'prorata clause'). In our opinion, whether one policy uses one clause or another, *when any come in conflict with the 'other insurance' clause of another insurer, regardless of the nature of the clause, they are in fact repugnant and each should be rejected in toto.*" (Citations omitted; emphasis added.)

219 Or. 110, 341 P.2d at 119.

 We agree with our Supreme Court's reasoning in *Indiana Insurance Company, supra*, and with the supporting

cases. Where "other insurance" clauses are found to be mutually repugnant they should be disregarded *in toto*. Applying this law to the facts before us, we conclude that Federated's and Indiana's policies contain conflicting excess and escape clause provisions which are irreconcilable. Therefore, these clauses are to be totally disregarded. Upon our excising the conflicting clauses, Federated's and Indiana's liability limits are identical, and, as the trial court ruled, they share primary liability for the loss. The trial court's judgment will not be disturbed.

## Issue II. Apportionment

Indiana next addresses the issue of apportionment of the loss. It argues that if the court finds the escape and excess clauses mutually repugnant, Indiana's liability should not exceed $15,000. Indiana contends its escape clause contains clear, unambiguous language specifying a lower liability limit for losses claimed by garage customers. This lower liability limit is not to exceed the applicable financial responsibility limit.

In many jurisdictions, upon their determining that the "other insurance" clauses are conflicting and irreconcilable, courts follow the principle of proration in apportioning the loss between concurrent insurers. *Allstate Insurance Company, supra; Indiana Insurance Company, supra; Werley, supra;* and *Lamb-Weston, Inc., supra*. The Indiana Supreme Court in *Indiana Insurance Company, supra*, at 408, 304 N.E.2d 783, adopted the proration rule, and quoted from *Werley, supra*, in its support of the rule:

" 'It does not arbitrarily pick one of the conflicting clauses and give effect to it; it does not deprive the insured of any coverage; it is not prejudicial in giving a windfall to one insurer at the expense of another; it does not encourage litigation between insurers; it does not delay settlements. On the other hand, it does enable underwriters to predict the losses of the insurers more accurately; it does preclude the use of illogical rules developed by the courts (e. g., first in time,

specific v. general and primary tort-feasor doctrines); and it does give a basis for uniformity of result. In addition, prorating the loss among all insurers is a rule that can be applied regardless of the number of insurers involved and regardless of the type of conflicts that are created by the 'other insurance' clauses."

In Note, *Concurrent Coverage in Automobile Liability Insurance*, 65 Colum.L.Rev. 319, 330 (1965), a brief but clear explanation of proration is given:

"The basis for proration according to liability limits rests upon proper recognition of the respective liabilities that the concurrent insurers would have incurred were it not for the purely fortuitous circumstance of the 'other insurance.' As a method of apportionment, it assures indemnification for the insured up to the maximum amount of coverage afforded by either policy. It has been disregarded only in the rare case where its application would have resulted in an excessive disparity in liability."

The pro rata rule is formulated from three principles: (1) follow the general intent of the insurer; (2) avoid windfalls to one insurer at the other insurer's expense; and (3) apportion burdens on the insurance companies in proportion to the benefits they receive in the form of premiums. *Indiana Insurance Company, supra.*

Indiana argues that the trial court ignored the general intent of the insurers to reduce liability when other insurance is present by not limiting its liability to $15,000. It contends that even if their escape clause is mutually repugnant to Federated's excess clause, for purposes of prorating liability their escape clause clearly limits it to the financial responsibility limit in the event of garage customer losses. In support of this proposition, Indiana cites *Graves, supra*. In *Graves*, the Louisiana Supreme Court considered two concurrent insurance policies, one with an escape clause that conflicted with the other's excess clause. Both insurance policies contained pro rata clauses which were separate from their escape and excess clauses. The *Graves* court stated:

"In these decisions the 'excess' and 'escape' clauses in policies providing double or concurrent coverage were held to be mutually repugnant and the pro rata clauses of each policy, not being repugnant, were enforced. Thus each insurer was held liable in proportion to the limit of its respective policy. We find no reason to depart from this solution and, accordingly, *hold the excess and escape clauses in the two policies to be mutually repugnant and ineffective. The pro rata clauses in each policy, on the other hand, are not incompatible* and these provisions will be enforced, making each insurer liable in proportion to the limit of its respective policy." (Emphasis added.)

252 La. 709, 214 So.2d at 118.

Our Supreme Court in *Indiana Insurance Company, supra*, was not faced with the issue of non-repugnant pro rata clauses together with conflicting "other insurance" clauses. The only issue before our Supreme Court was which of two insurance companies is primarily liable for a loss when each insurer's policy contains an "other insurance" provision. Upon its excising the conflicting provisions in both policies, the Indiana Supreme Court did not find other restrictive language limiting the insurers' liability contained elsewhere in their policies. On that basis alone *Graves* is distinguishable. In *Graves*, the Louisiana Supreme Court found other non-repugnant, restrictive clauses limiting the insurers' liability. Moreover, that court was able to interpret the pro rata clauses which restricted the insurers' liability, and they were not mutually repugnant. Upon disregarding the conflicting clauses in the overlapping insurance policies, our Supreme Court in *Indiana Insurance Company, supra*, held that each insurer is primarily liable for a prorated amount of the resultant damages not to exceed its policy limits. In the case at bar, the trial court found that the escape and excess clauses were mutually repugnant and irreconcilable. These "other insurance" clauses were the only provisions that limited the liability of the

insurers. Upon disregarding these conflicting clauses *in toto*, Federated's and Indiana's policy liability limits are $100,000 per person and $300,000 per occurrence. The only limitation on liability for garage customers that appears in Indiana's policy is found within its escape clause provision, which, being found mutually repugnant has been disregarded.[6] Indiana's sole argument in support of its express intent to limit liability as to garage customers is based upon the assertion that mutually repugnant clauses are not repugnant for all purposes. That is, though clauses may be found mutually repugnant for liability purposes, they can still be used to deduce the intent of the insurer to limit the amount or extent of its liability. We view Indiana's Limited Coverage for Certain Insureds clause as merely another form of escape clause. Indiana's $15,000 limitation for garage customers is intricately bound to its escape clause. Had Indiana chosen, it could have inserted an unequivocal, lower limit of liability for garage customers toward the front of its policy beside the other coverage schedules. Instead, its purported limitation is buried in and is an intricate part of its escape clause provision. Indiana would have us completely disregard Federated's excess clause while permitting residues of its escape clause to remain, i. e. the $15,000 limit for garage customers. This we cannot do. Had Indiana provided special liability coverage for garage customers elsewhere than in its escape clause, we would be obliged to address the issue of lower liability limits for garage customers. However, the single reference to a lower limitation of liability appears in Indiana's escape clause. We can only infer, upon our disregarding its escape clause provision, that Indiana intended to cover garage customers for the maximum amount of its policy limits.

While Indiana correctly construes *Union Insurance Company, supra*, as a case where policy limits were those limits established and specified in the Iowa financial responsibility limit law, the Iowa Supreme Court in *Union* stated:

"As already indicated, we are satisfied, a *repugnancy between relative provisions of two policies is more equitably resolved by ignoring the two offending clauses.* Resultantly Iowa Hardware's policy, minus its escape clause, covers the insured, while the Union Insurance policy, minus its excess clause, provides like coverage. The insured is thus protected by both insurers which is a reasonable result since each wrote expanded coverage policies which must have been intended to reach her, *and this problem of double insurance was 'involuntarily thrust upon the insured through the operation of another's insurance contract.'*" (Emphasis added.)

175 N.W.2d at 418. The *Union* court then prorated the loss between the insurance companies in proportion to the amount of insurance provided by their respective policies disregarding the repugnant clauses.

Clearly the decision in *Union Insurance Company, supra*, does not stand for the proposition that where irreconcilable, mutually repugnant clauses are to be ignored, the insurer's intent can nevertheless be gleaned from those same, disregarded provisions. More importantly, our Supreme Court's ruling in *Indiana Insurance Company, supra*, plainly does not support this argument.

■ Subsequent to its ruling in *Lamb-Weston, Inc., supra*, the Oregon Supreme Court, on petition for rehearing in the same case, recognized the following controlling principle of proration:

"[W]hen there is a loss which should be shared, the *respective shares will be determined by considering the benefits which accrued to the contributors.* With the general average cases, the benefit is the value of the goods saved. With a surety contract, the benefit is the premium paid." (Emphasis added.)

219 Or. 110, 346 P.2d 643 at 646. In the case at bar, the premium amounts of both

---

6. Further, Indiana's and Federated's policies contain identical apportionment clause sections which are not at issue here.

Federated's and Indiana's policies are virtually the same.[7] The above stated principle further supports a reasonable conclusion that Federated and Indiana should contribute to the settlement in proportion to the benefit (premium) each secured from the insurance contract.

Finally, Indiana cites *Ryder Truck Lines, Inc. v. Carolina Casualty Insurance Company,* (1979) Ind., 385 N.E.2d 449, for the proposition that mutually repugnant clauses do not warrant a wholesale judicial rewriting of the contracts. In *Ryder Truck Lines, supra,* the Indiana Supreme Court faced the issue of whether an Interstate Commerce Commission (ICC) endorsement, required by law on the carrier's contract, created primary liability in that insurer regardless of other express language contained in the insurance policies. Both insurance contracts contained pro rata clauses. While our Supreme Court recognized its earlier decision, *Indiana Insurance Company, supra,* it did not find the pro rata clauses in Ryder to be irreconcilable. In reversing the Court of Appeals' decision, which held that the ICC endorsed carrier policy was primary coverage, the Indiana Supreme Court was not reversing a judgment in which the Court of Appeals had found irreconcilable, conflicting "other insurance" clauses. Rather, the Court of Appeals' decision was founded upon the legislative policies propounded in the Interstate Commerce Commission Act, that court stating:

> "[T]hat the broad policies of Section 215 of the Interstate Commerce Act, 49 U.S.C. § 315, of securing compensation to injured parties and encouraging safety on the highways are best achieved by holding the carrier's insurer primarily responsible for losses it incurs when engaged in interstate commerce."

372 N.E.2d at 510. Therefore, the *Ryder* decision did not involve mutually repugnant "other insurance" clauses, and our Supreme Court's ruling there did not change its earlier decision in *Indiana Insurance Company,* *supra,* in which mutually repugnant clauses are to be ignored *in toto.* We believe that the Indiana Supreme Court's holding in *Indiana Insurance Company, supra,* remains the law. Each insurer's policy limit is $100,000 per person; each is liable for $50,000 of the $100,000 settlement.

Judgment affirmed.

ROBERTSON and RATLIFF, JJ., concur.

---

7. As set forth in the statement of the facts, Federated's policy premium cost is $2,684 while Indiana's is $2,644.