COLUMBIA MUTUAL INSURANCE
COMPANY, Appellant,

v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, Appellee.

No. S–6058.

Supreme Court of Alaska.

Nov. 9, 1995.

Robert C. Erwin, Anchorage, for Appellant.

Sheldon E. Winters, Lessmeier & Winters, Juneau, for Appellee.

Before MOORE, C.J., and RABINOWITZ, MATTHEWS, COMPTON and EASTAUGH, JJ.

*OPINION*

RABINOWITZ, Justice.

The principal issue in this appeal is whether the parties' insurance policies conflict. Also raised is the issue of whether contribution calculations should be based on the face value of the alleged conflicting policies or upon the actual amount available for a given accident. Finally, we must determine whether an exclusion in Columbia's policies is applicable.

## I. *FACTS AND PROCEEDINGS*

This appeal arises out of an auto accident that occurred near Ketchikan on August 25, 1990. Jim Burks Sr., driving an automobile owned by Jackie Lee, collided with a motorcycle carrying two persons. As a result, State Farm Mutual Automobile Insurance Company (State Farm) paid $100,000, its policy limit, to each injured cyclist in full settlement of all claims.

State Farm insured Lee's automobile and permissive users thereof, and Columbia Mutual Insurance Company (Columbia) insured Burks. More precisely, Columbia insured two ·of Burks'· automobiles in his home state of Missouri. In addition to providing coverage for Burks' two listed automobiles, the Columbia policies contained standard clauses which insured Burks when he drove other automobiles under certain circumstances.

After settling the underlying claims, State Farm sought contribution from Columbia as a joint insurer. Columbia denied any liability, claiming that its policies provided only excess coverage. Specifically, both Columbia policies stated:

> If there is other applicable liability insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide for a vehicle you do not own shall be excess over any other collectible insurance.

Given that Burks was driving Lee's car—a "non-owned" automobile under the terms of Columbia policies—Columbia argued that its coverage was excess, and that since the claims were settled within State Farm's policy limits, no excess exists and contribution was thus inappropriate.

▊ State Farm moved for summary judgment, claiming that its policy conflicted with Columbia's and therefore, pursuant to our holding in *Werley v. United Services Automobile Association*, 498 P.2d 112 (Alaska 1972), the loss should have been prorated

between the two insurers.[1] In relevant part, State Farm's policy stated:

> [I]f other vehicle liability coverage applies, we are liable only for our share of the damages. Our share is the per cent that the limit of liability of this policy bears to the total of all vehicle liability coverage applicable to the accident.
>
> . . . .
>
> If a temporary substitute car [or] a non-owned car ... has other vehicle liability coverage on it, then this coverage is excess.

The superior court concluded that the policies did in fact conflict, and granted State Farm's motion for summary judgment. The superior court also concluded that the policy coverage limits available in this particular case, rather than the overall policy limits, formed the basis of the contribution calculation. Furthermore, the superior court ruled that "the evidence does not show a genuine issue that the car ·was available for all purposes." It thus denied Columbia's claim that a policy exclusion was applicable. Columbia now appeals the superior court's grant of summary judgment.

## II. *STANDARD OF REVIEW*

A motion for summary judgment is granted only when the record indicates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Alaska R.Civ.P. 56(c). In determining whether State Farm is entitled to judgment as a matter of law, we must construe the relevant provisions of the State Farm and Columbia policies. "The construction of an insurance contract is a matter for the court, unless its interpretation is dependent upon the resolution of controverted facts." *O'Neill Investigations v. Illinois Employers Ins. of Wausau*, 636 P.2d 1170, 1173 (Alaska 1981).

## III. *DISCUSSION*

### A. *The Policies Conflict.*

▊ In *Horace Mann Insurance Co. v. Colonial Penn Insurance Co.*, 777 P.2d 1162

---

1. In *Werley*, we held that when "other insurance" clauses conflict with one another, "'they are in fact repugnant and each should be rejected in toto.'" 498 P.2d at 118 (quoting *Lamb-*

*Weston, Inc. v. Oregon Auto. Ins. Co.*, 219 Or. 110, 341 P.2d 110, 119 (1959)). Under this rule, the loss is then prorated between the insurers up to their respective policy limits. *Id.* at 117.

(Alaska 1989), we considered a fact pattern almost identical to that now posed. In that case, Horace Mann made the same type of argument that Columbia makes here:

> Horace Mann argues that there is no conflict between its "other insurance" clause and Colonial Penn's. It reasons that its policy provides excess coverage as to non-owned automobiles when other available insurance exists. According to Horace Mann, until Colonial Penn exhausts its limits, its coverage is not other available insurance within the meaning of Colonial Penn's "other insurance" clause. Thus, it concludes no conflict between the "other insurance" clauses exists.

*Id.* at 1164.

> Rejecting this line of reasoning, we stated: The fallacy of this argument is that Colonial Penn's policy does not prorate with other available insurance. Instead, it prorates with other "valid and collectible insurance." This term is clearly intended to include all insurance that would cover the loss in the absence of "other insurance." Thus, in this case a conflict arises. Colonial Penn's policy requires proration; on the other hand, Horace Mann's policy requires that it be treated as excess insurance.

*Id.* Finding a conflict, we concluded that "the insurers must prorate the loss." *Id.*

Of significance is the fact that the provisions in State Farm's and Columbia's insurance policies are essentially identical to those which were held to be conflicting in *Horace Mann.*[2] The only differences between the policies reviewed in *Horace Mann* and those now before us are the adjectives employed, a distinction of no substantive significance.[3] Accordingly, application of *Horace Mann* leads to the conclusion that State Farm's and Columbia's "other insurance" clauses conflict.

We additionally note that Columbia does not assert that *Horace Mann* is inapplicable nor does it ask us to overrule it. Instead, Columbia contends that this case is distinguishable and, as Horace Mann argued, more readily likened to *Providence Washington Insurance Co. of Alaska v. Alaska Pacific Assurance Co.,* 603 P.2d 899, 902–03 (Alaska 1979). However, our reason for rejecting the application of *Providence Washington* in *Horace Mann* is also appropriate here:

> In *Providence Washington,* both policies' "other insurance" clauses stated that the policy was "primary insurance[ ] except when stated to apply in excess of or contingent upon the absence of other insurance." *Id.* at 902–03. Both policies also stated that they were excess as to hired automobiles. *Id.* at 903. The vehicle involved in the accident was a hired automobile as to Alaska Pacific; under Providence Washington's policy, the vehicle was owned. Thus, we concluded that there was no conflict in the "other insurance" clauses. *Id.* at 903. In this case neither policy's language asserts that it is primary.

Thus, we conclude that the trial court correctly found that the "other insurance" clauses were in conflict and prorated the

---

2. Much like State Farm's policy, Colonial Penn's "other insurance" clause read:

*If a loss involves a listed auto.* In a loss that involves a listed auto, an insured person may have other insurance against the same loss. If so, we won't be liable for more than our share of the loss. Our share of the loss will be the proportion this policy's coverage is of the total amount of all valid and collectible insurance. *If a loss involves the use of a non-owned auto or a temporary substitute auto.... For losses that involve such autos this policy will be excess insurance.*

*Horace Mann,* 777 P.2d at 1163 n. 1.

Similarly, much like Columbia's, Horace Mann's "other insurance" clause provided:

OTHER INSURANCE

If the *insured* has other insurance against a loss covered by *bodily injury* and *property damage* liability coverage of this policy the company shall not be liable under this policy for a greater proportion of such loss then [sic] the applicable limit of liability states in the declarations bears to the total applicable limit of liability of all collectible insurance against such loss[.]

....

[T]he insurance with respect to any ... *non-owned automobile* shall be excess over other collectible insurance.

*Id.* at 1163 n. 2.

3. Specifically, Colonial Penn's policy stated that it is to be prorated against the "total amount of all valid and collectible insurance", *id.* at 1163 n. 1, while State Farm's policy states that it is to be prorated against the "total of all vehicle liability coverage applicable to the accident."

loss between Colonial Penn and Horace Mann.

*Horace Mann,* 777 P.2d at 1164–65. Similarly, neither Columbia's nor State Farm's policies state that they are "primary." Consequently, Columbia's assertion that *Providence Washington* controls is unpersuasive.

B. *The Superior Court Did Not Err in Calculating Contribution.*

■ Columbia next contends that even if contribution is appropriate, the superior court overstated its contribution share. Specifically, Columbia argues that contribution shares should be calculated based on overall policy limits, not per accident limits. The issue presented is whether the superior court applied the correct formula for calculating Columbia's pro rata share of contribution.

In this instance, State Farm's policy has limits of one hundred thousand dollars ($100,000) per person and three hundred thousand dollars ($300,000) per accident (100/300). Columbia has two policies: one has a single limit of sixty thousand dollars ($60,000), and the other has a limit of twenty-five thousand dollars ($25,000) per person and fifty thousand dollars ($50,000) per accident (25/50).

In calculating contribution shares, the superior court used per accident shares. More precisely, since two individuals were injured in the accident, State Farm was potentially liable for $200,000, its per person policy limits, while Columbia was potentially liable for $110,000, its per person policy limits of $50,000 and single limit policy of $60,000. To-

gether, State Farm and Columbia's per person exposure totaled $310,000 (200,000 + 110,000) for this accident. Consequently, the superior court held that Columbia should contribute ¹¹⁄₃₁, or $70,967.74 (¹¹⁄₃₁ × 200,000). Columbia argues that its contribution share should be ¹¹⁄₄₁, thus reflecting State Farm's overall policy limits of $300,000.

In relying upon *Continental Insurance Co. v. United States Fidelity and Guaranty Co.,* 528 P.2d 430, 436 (Alaska 1974), the superior court correctly concluded that contribution "should be based upon the theories available within the coverage of the relevant policy." [4] In *Continental,* the court faced facts analogous to those now presented:

> The general liability policy issued by Continental to Northern had an aggregate limit of $500,000, without smaller limits per person or occurrence. The U.S.F. & G. policy issued to Cooper contained limits of $100,000 per person and $300,000 per occurrence for bodily injury liability. The amount of coverage U.S.F. & G. would have provided had it been ultimately found liable was $200,000. U.S.F. & G. should therefore bear two-sevenths of Continental's costs.... We remand for the calculation of that sum.

*Id.* at 435–36 (footnote omitted).

As in *Continental,* in this case two people were injured in the underlying accident. Thus, State Farm's exposure was, at most, $200,000 under its policy. Consequently, following *Continental* the contribution formula should only reflect State Farm's actual exposure—$200,000—not its overall policy limit of $300,000.[5]

---

**4.** Although *Continental* dealt with the proration of defense costs between potentially liable insurers, we find its logic equally compelling in the allocation of coverage.

**5.** In opposition, Columbia cites *Marwell Construction; Inc. v. Underwriters at Lloyd's, London,* 465 P.2d 298 (Alaska 1970). Columbia contends that *Marwell* states that overall policy limits form the proper basis for calculating contribution. However, in addition to pre-dating *Continental,* *Marwell* merely states a general proposition; it does not definitively hold that overall policy limits are appropriate nor does it discuss a specific application like the *Continental* court did. Instead, *Marwell* states:

> We employ the principle of equitable subrogation and rule that the defense costs must be

shared pro rata between concurrent insurers in proportion to the amounts of coverage they have provided.

*Id.* at 313.

Columbia notes that sister states, including Oregon, upon whose law our decision in *Werley* was patterned, use overall policy limits in calculating contribution. However, the fact that we adopted a rule from another jurisdiction does not mean that the tangential holdings of that jurisdiction's courts must also be adopted in whole or in part. Furthermore, the per accident approach which we adopted in *Continental* reflects a more appropriate application of the contribution calculation than the alternative of simply looking to overall policy limits.

478

### C. Columbia's Exclusion is Inapplicable: No Genuine Issue of Material Fact Exists.

Columbia alternatively argues that the above analysis is entirely unnecessary since a policy exclusion precludes coverage. Columbia's policies state:

> We do not provide Liability Coverage for the ownership, maintenance or use of:
>
> . . . .
>
> 2. Any vehicle, other than "your covered auto," which is:
>
> . . . .
>
> b. furnished or available for your regular use.

Columbia contends that there is a direct conflict in the testimony as to whether the vehicle was available for regular use by Burks, thus precluding summary judgment.

The superior court first defined "regular use" to mean "steady or uninterrupted use for all purposes and without limitation." The superior court next discussed its summary judgment posture:

> Columbia need not prove an exclusion in opposition to the motion for summary judgment. Columbia needs only to show evidence of genuine issues of material fact. Further, the court believes that the court must draw all reasonable inferences from the facts presented and decide if, with those inferences, there is a genuine issue of material fact.

The superior court then concluded:

> [T]he evidence does not show a genuine issue that the car was available for all purposes. To borrow a friend's car when you need it is not to borrow it whenever it might occur to you to use it. It is not an unlimited permission for all purposes. It is not "furnished or available for regular use" as that has been accepted in the cases.

In addressing this issue, we must first determine whether the superior court's definition of "regular use"—"steady or uninterrupted use for all purposes and without limitation"—is appropriate and then determine whether any genuine issues of fact preclude summary judgment.

The issue of what constitutes "furnished or available for regular use" is one of first impression. Although the superior court's interpretation of the "regular use" exclusion may seem narrow, it is appropriate in light of two factors. First, "insurance coverage provisions should be broadly construed while exclusions are to be interpreted narrowly." *Whispering Creek Condominium Owner Ass'n v. Alaska Nat'l Ins. Co.*, 774 P.2d 176, 178 (Alaska 1989). Second, Columbia does not contest the superior court's definition of "regular use" but rather argues that Burks' and Lee's contradictory testimony precludes summary judgment. Thus, on this record the superior court's definition of "regular use" is appropriate.

Columbia contends that genuine issues of material fact concerning Burks' use of the vehicle preclude summary judgment. In support, Columbia relies on allegedly conflicting deposition testimony of Burks and Lee, State Farm's insured and owner of the car. Review of the record persuades us that Columbia has failed to demonstrate the existence of a genuine issue of material fact. In making this conclusion, we note that it is undisputed that Burks used the car only three to six times over a four month period. Additionally, each time Burks used the car, he asked for and received permission from Lee. Thus we affirm the superior court's holding that as a matter of law the exclusionary clauses in Columbia's policies are inapplicable.

### IV. CONCLUSION

State Farm's motion for summary judgment was properly granted for the following reasons. First, per *Horace Mann*, the "other insurance" clauses of the State Farm and Columbia policies conflict; thus, contribution is appropriate. Additionally, the superior court's contribution calculation correctly reflected the policy limits applicable to this accident rather than overall policy limits; thus, Columbia's contribution share was not overstated. Finally, as appropriately defined by the superior court, the auto was not furnished or available for Mr. Burks' "regular use"; thus, no policy exclusion is applicable.

Accordingly, the superior court's summary judgment decision is AFFIRMED.