**NOT RECOMMENDED FOR PUBLICATION**

File Name: 20a0236n.06

Case No. 19-3635

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

COMMERCE & INDUSTRY INSURANCE
COMPANY,

    Plaintiff-Appellant,

v.

CENTURY SURETY COMPANY,

    Defendant-Appellee.

)
)
)
)
)
)
)
)
)
)
)

**FILED**

Apr 30, 2020
DEBORAH S. HUNT, Clerk

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE SOUTHERN
DISTRICT OF OHIO

**O P I N I O N**

BEFORE: MOORE, McKEAGUE, and READLER, Circuit Judges.

**McKEAGUE, Circuit Judge.** An ATV accident on the Alaska Peninsula over ten years ago spawned this insurance dispute; today, a federal court based in Ohio resolves it with the help of Pennsylvania law. What takes us all over the map are dueling policies issued to contractors at the accident site by jurisdictionally diverse insurers—the plaintiff, Commerce & Industry, and the defendant, Century Surety. Commerce argues that its insurance coverage took a backseat to Century's, so Century must pay for all the legal defense costs associated with the ATV accident. Century responds that the district court got it right in splitting costs between the two of them. The district court got it mostly right, but not all right. We accordingly **AFFIRM** in part, **VACATE** in part, and **REMAND**.

**I.**

**A.**

Weston Solutions was a contractor working on a decontamination project in the remote town of Port Heiden, Alaska. It subcontracted for transportation services with Aniakchak, a local company presumably named after the nearby ancient volcano, Mount Aniakchak. In remote Alaska, though, "transportation services" is a euphemism for ATV rides, which have their risks. So Weston and Aniakchak agreed in their subcontract that Aniakchak would "indemnify, defend and hold harmless" Weston and its employees in the event of an accident resulting from Aniakchak's work. Aniakchak further agreed that it would maintain a commercial general liability insurance policy (a "CGL" policy) that named Weston as an "additional insured," covering Weston for such an accident. Weston already had its own CGL policy issued by Commerce; Aniakchak's CGL policy was issued by Century, and Weston was named as an additional insured through an "endorsement" to the policy (an amendment, basically) after the subcontract was executed.

What does that all mean? It means that in the event of an accident involving Aniakchak, Weston was doubly insured—through the policy Commerce directly issued it, and through the additional insured provision in the policy Century issued Aniakchak.

That's how these subcontracts normally work, by the way. A contractor hires a subcontractor to perform some work. Pursuant to the subcontract, the subcontractor maintains a CGL policy that, in addition to covering the subcontractor, covers the contractor as an additional insured. The idea is that if a third party gets hurt because of the subcontractor's work, and that third party sues the contractor, the subcontractor's insurer will take care of everything. But contractors already have CGL policies of their own which cover them in the event of such an accident. So to avoid overlapping coverage, a contractor's insurer will include a provision in its

policy saying that if the contractor is covered as an additional insured in a subcontractor's policy, the contractor's policy is "excess." This is called an "other insurance" provision. Usually, it operates such that the contractor will first rely on its coverage as an additional insured (the contractor's "other insurance"), then turn to its own insurer. *See, e.g.*, *First Mercury Ins. Co. v. Cincinnati Ins. Co.*, 882 F.3d 1289, 1301–04 (10th Cir. 2018); *Wright-Ryan Constr., Inc. v. AIG Ins. Co. of Canada*, 647 F.3d 411, 414–17 (1st Cir. 2011).

That's what the subcontract between Weston and Aniakchak contemplated. The subcontract mandates that Weston's additional insured coverage through Aniakchak's insurance be "primary" to Weston's own CGL coverage. Accordingly, Aniakchak's policy with Century contains a standard additional insured provision for Weston: Century covers Weston as an additional insured "but only with respect to 'bodily injury,' 'property damage,' or 'personal and advertising injury' caused, in whole or in part, by" Aniakchak or those working on its behalf "in the performance of [its] ongoing operations for [Weston.]" Century Policy, R. 37-6, PageID 1454. And sure enough, the Century policy provides that its coverage is "primary and non-contributory" with respect to its additional insureds. *Id.* These provisions operate seamlessly with Weston's CGL policy with Commerce: Commerce's coverage is excess when other insurance is available to Weston as an additional insured. Commerce Policy, R. 37-13, PageID 1510.

Simple enough (for insurers, at least). There's just one problem. Century's policy also includes an other-insurance provision, but it's broader. It says that if an "insured" under the Century policy has any other insurance available to it, then Century's coverage is excess—even if the other insurance is itself excess. Century Policy, R. 37-6, PageID 1436. We'll see how that complicates things later on.

**B.**

With that groundwork, we turn to the accident. Just before the project in Port Heiden finished, an Aniakchak ATV crashed en route from a Weston barbecue, injuring the passenger, an engineer named Kathryn Daniel. Daniel sued three parties in Alaska state court for her injuries: Weston, Aniakchak, and Konan Lind, the ATV driver. In her first complaint, filed in 2011, she alleged that (1) Weston itself was negligent, (2) Aniakchak was negligent and vicariously liable for Lind's negligence as Lind's employer, and (3) Lind was negligent. Two years later, in 2013, Daniel filed a second, amended complaint. In the second complaint, she added allegations that Lind was also employed by Weston, and that Weston was vicariously liable for Lind's negligence.

The litigation in Alaska has since resolved. Its outcome is irrelevant here because the insurers are fighting over who has to pay defense costs—an obligation that arises from an insurer's broad contractual "duty to defend" its insureds in litigation. The parties agree that their policies provide a duty to defend only when their coverage is primary. And generally, an insurer's duty to defend kicks in when a complaint alleges there was an injury that potentially falls within the scope of the defendant's insurance coverage.

You might see where things are headed now. Weston might have been doubly covered— through normal CGL insurance with Commerce, and as an additional insured in Century's policy. If so, which coverage was primary (that is, which insurer had to pay Weston's defense costs)? What about Lind—was there an issue of primacy there, too? And did it matter *when* Daniel alleged Lind was a Weston employee? Commerce sued Century for a declaratory judgment to figure this all out.

With respect to Weston's defense, Commerce argued that Weston was possibly covered as an additional insured under Century's policy because Daniel's injuries were allegedly caused "in

part" by Aniakchak. And additional insured coverage is "primary and non-contributory," according to the Century policy. Thus, Commerce said, its coverage was excess per its own other-insurance provision, vitiating its duty to defend Weston. Century responded that even if that's so, the broad other-insurance provision in Century's policy also deems Century's coverage excess, because other insurance was available to Weston through Commerce. And if both policies are excess, they conflict, making both insurers responsible for defense costs.

As for Lind's defense, Commerce reiterated its Weston-based arguments: Lind was an additional insured, so Century's coverage was primary. Commerce alternatively argued that if its own coverage was primary, then it couldn't be responsible for defense costs incurred by Lind before he was alleged to be Weston's employee. Commerce's policy only covered Weston and its employees, not Aniakchak employees. For its part, Century countered that only Weston is an additional insured under its policy, not Weston employees. On top of that, Commerce's other-insurance provision applies only when Weston is additionally insured, not Lind. And, according to Century, Commerce was obligated to pay all defense costs once Commerce's policy became primary, even costs incurred before that point.

The district court held in Century's favor on both points. *See Commerce & Indus. Ins. Co. v. Century Sur. Co.*, 313 F. Supp. 3d 877 (S.D. Ohio 2018). Century's policy, governed by Alaska law, and Commerce's policy, governed by Pennsylvania law, conflicted with respect to Weston's defense. Both policies claimed they were excess. So both insurers had to pay. *Id.* at 883–84. As for Lind, while both policies provided primary coverage, Commerce's other-insurance provision was inapplicable. Commerce alone thus had to pay for Lind's defense. Moreover, as the primary insurer, Commerce was in for a penny, in for a pound—all defense costs, even those incurred before Daniel alleged Weston employed Lind, were Commerce's responsibility. *Id.* at 884–85.

**II.**

Commerce appeals, and both sides renew their arguments from below. We review the district court's grant of summary judgment de novo. *K.V.G. Props., Inc. v. Westfield Ins. Co.*, 900 F.3d 818, 821 (6th Cir. 2018).

**A.**

We deal with Weston first. To start, we don't doubt that given Daniel's allegations, Weston potentially qualified as an additional insured, engendering Century's duty to defend under that provision. Under Alaska law, which applies to the Century policy, the duty to defend arises where "a complaint states a cause of action within, or potentially within, the policy coverage." *Afcan v. Mut. Fire, Marine & Inland Ins. Co.*, 595 P.2d 638, 645 (Alaska 1979). Here, the additional insured provision—specifically its coverage of Weston for injury "caused, in whole *or in part*, by" Aniakchak—"plainly extends coverage beyond underlying lawsuits in which a plaintiff expressly raises claims against [Aniakchak], requiring only that [Aniakchak's] acts or omissions have some causal relationship to the injury." *First Mercury Ins. Co.*, 882 F.3d at 1302. Thus, even though Daniel initially alleged Weston was itself negligent rather than vicariously liable, her allegations against Aniakchak meant Aniakchak could be a cause in part of her injuries, triggering potential coverage for Weston. *See id.*; *Ramara, Inc. v. Westfield Ins. Co.*, 814 F.3d 660, 673–76 (3d Cir. 2016); *see also Pro Con, Inc. v. Interstate Fire & Cas. Co.*, 794 F. Supp. 2d 242, 256–57 (D. Me. 2011) ("[B]y including the language 'in whole or in part' in its [additional insured provision], [the insurer] specifically intended coverage for additional insureds to extend to occurrences attributable in part to acts or omissions by both the named insured *and* the additional insured."). And because Daniel's complaint triggered the additional insured provision, in a normal case, Commerce's

coverage of Weston would be excess to Century's: Commerce's policy is excess over additional insured coverage available to Weston. Commerce Policy, R. 37-13, PageID 1510.

But this is not a normal case. The Century policy includes a broad other-insurance provision: coverage is excess to any other insurance "the insured" has, even if that other insurance is excess. Century Policy, R. 37-6, PageID 1436**.** And "the insured" means not just Aniakchak (defined in the policy as "you" or the "named insured") but anyone insured under the policy, including additional insureds like Weston. *Id.*, PageID 1404**.** In other words, even if Weston is covered as an additional insured under the Century policy—thus deeming Weston's normally primary CGL coverage with Commerce excess—the Century policy's coverage is also excess. This is strange because one would expect to see a qualifying clause in Century's policy keeping its additional insured coverage primary, to honor the subcontract between Weston and Aniakchak. *See, e.g.*, *Westfield Ins. Co. v. Weaver Cooke Constr., LLC*, 383 F. Supp. 3d 566, 579 (E.D.N.C. 2019) ("This coverage shall be excess with respect to [an additional insured]; any other insurance [an additional insured] has shall be primary with respect to this insurance, unless this coverage is required to be primary and not contributory in the contract [between the additional insured and the named insured]."). But that clause, or one like it, is absent here.

This doesn't read the phrase "primary and non-contributory" out of Century's additional insured provision, as Commerce suggests. We must give effect to every provision of an insurance policy when possible. *Stordahl v. Gov't Emps. Ins. Co.*, 564 P.2d 63, 66 n.7 (Alaska 1977). And here, in order to give effect to both the additional insured provision and the other-insurance provision, the additional insured provision must provide primary and non-contributory coverage *except* when the other-insurance provision applies. That's how it works with Century's coverage of Aniakchak, too: coverage is primary, unless the other-insurance provision applies.

Granted, the phrase "primary and non-contributory" assumes that additional insureds will have excess coverage lurking elsewhere. And they typically do. So the way the other-insurance provision is written, it will nearly always apply to an additional insured. But not always. If for some reason an additional insured has no other coverage, or its other coverage isn't "valid" or "collectible," the other-insurance provision won't apply. Century Policy, R. 37-6, PageID 1436. Moreover, we know that Century intended the other-insurance provision to apply to additional insureds because the provision applies to "the insured," rather than simply "you" or the "named insured." Nowhere are additional insureds carved out—even though the named insured is, under certain circumstances. *Id.* And again, noticeably absent from the policy is standard qualifying language deeming an additional insured's coverage excess unless a subcontract requires it to be primary and non-contributory. We can't read an "additional insured exception" into Century's other-insurance provision where there is none.

Nor can the terms of the subcontract between Weston and Aniakchak change what the Century policy says. We recognize that the other-insurance provision of the Century policy seemingly means that the policy didn't comply with Aniakchak's obligations under its subcontract with Weston. That's an issue between Aniakchak and Weston, however, and not relevant to this dispute between Commerce and Century.

Century's other-insurance provision was therefore triggered in addition to Commerce's. Both policies, however, can't be excess. That would leave Weston without any primary coverage and, in turn, no defense. So the law provides that if other-insurance provisions conflict, both insurers are on the hook for defense costs. *Am. Cas. Co. of Reading v. PHICO Ins. Co.*, 702 A.2d 1050, 1056 (Pa. 1997); *Werley v. United Servs. Auto. Ass'n*, 498 P.2d 112, 117–19 (Alaska 1972).

We thus agree with the district court's bottom-line conclusion that Commerce and Century are each responsible for Weston's defense.

**B.**

We also agree with the district court that Commerce's coverage of Lind was primary to Century's. Once Daniel alleged Lind was an employee of Weston and Aniakchak, all agree there was a potential for coverage for Lind under each policy's normal CGL coverage. The only question is whether both policies' other-insurance provisions were triggered, too, creating a conflict.

They weren't. Commerce's other-insurance provision says that its coverage is excess over "[a]ny other primary insurance available to *you* covering liability for damages arising out of the . . . operations . . . for which *you* have been added as an additional insured . . . ." Commerce Policy, R. 37-13, PageID 1510 (emphasis added). "You" means only the "named insured"—Weston. *Id.*, PageID 1501. It does not mean anyone who is an "insured" under Commerce's policy, a category which includes Weston's employees. *Id.*, PageID 1501, 1508. Thus, even if Lind potentially qualified as an additional insured under the Century policy, that would be other insurance available to *him*, not to *Weston*, which fails to trigger Commerce's other-insurance provision. Compare this with Century's policy. Its other-insurance provision more broadly applies whenever "the insured" has any other insurance coverage. Century Policy, R. 37-6, PageID 1436. "The insured" includes Aniakchak employees like Lind. *Id.*, PageID 1404, 1412. Century's other-insurance provision was thus triggered, but not Commerce's, rendering Century's coverage excess and Commerce's primary.

The district court therefore correctly held that, once Lind was alleged to be a Weston employee, Commerce's coverage was primary and Commerce alone had a duty to defend.

**C.**

Our agreement with the district court ends there, though. The district court concluded that because Commerce's coverage was primary and Century's excess, Commerce was responsible for *all* of Lind's defense costs—even those that arose before Daniel alleged Lind was a Weston employee.

We see it differently. Under Pennsylvania law, which governs Commerce's policy, "[a]n insurer is obligated to defend its insured if the factual allegations of the complaint on its face encompass an injury that is actually or potentially within the scope of the policy." *Am. & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc.*, 2 A.3d 526, 541 (Pa. 2010). Put another way, "[a]s long as a complaint alleges an injury which may be within the scope of the policy, the insurer must defend its insured until the claim is confined to a recovery the policy does not cover." *State Farm Fire & Cas. Co. v. DeCoster*, 67 A.3d 40, 46 (Pa. Super. Ct. 2013) (quotation and emphasis omitted).

Here, no duty to defend could have existed on Commerce's part until Lind was arguably its insured. And that wasn't the case until Daniel's second complaint alleged Weston employed Lind. The first complaint, in comparison, stated that Lind was Aniakchak's employee. Nor were there any factual allegations in the first complaint suggesting Weston employed Lind. The allegations that Century points to—that Weston hosted the barbecue from which Lind drove Daniel, and that Lind failed to comply with the "transportation safety plan" Aniakchak and Weston adopted—don't come close to suggesting Weston had the control over Lind necessary to create an employer–employee relationship. *See Cmty. for Creative Non-Violence v. Reid*, 490 U.S. 730, 751–52 (1989); *Powell v. Tanner*, 59 P.3d 246, 249 (Alaska 2002). The fact that Daniel filed a second complaint illustrates that point. If the first complaint actually stated Weston's control over

Lind, she wouldn't have needed to file a second complaint alleging Weston "retained control over [Lind's] work, and directed his work during the contract."

Accordingly, from the beginning of Daniel's suit in 2011 up to the filing of her second complaint in 2013, her claim was "confined to a recovery" that Commerce's policy didn't cover with respect to Lind; any injury caused by Lind was definitively outside the scope of the policy. *Jerry's Sport Ctr., Inc.*, 2 A.3d at 542; *DeCoster*, 67 A.3d at 46 (quotation and emphasis omitted). No potential coverage, no duty to defend, and no responsibility for defense costs—at least until the filing of the second complaint. *See Seaboard Indus., Inc. v. Monaco*, 392 A.2d 738, 744 (Pa. Super. Ct. 1978); *cf.* Allan D. Windt, *Insurance Claims and Disputes*, § 4.44 (6th ed.) (noting that, in the context of pre-tender defense costs, most courts hold that "an insurer is not liable for [such] costs" in part because "until the policy coverage is triggered, defense costs are not covered").

True, it seems that Weston and Commerce were tipped off to the possibility of Lind's employment with Weston earlier. Lind's counsel tendered defense on Commerce and Weston in 2012, mentioning the issue. There was also summary-judgment briefing in Daniel's case just before the filing of her second complaint arguing Weston employed Lind. But "[t]he question of whether a claim against an insured is potentially covered is answered by comparing the four corners of the insurance contract to the four corners of the complaint." *Jerry's Sport Ctr., Inc.*, 2 A.3d at 541. This evidence breaches all eight corners. And the one published Pennsylvania case that says a court can look outside the complaint in circumstances like this—*Heffernan & Co. v. Hartford Ins. Co.*, 614 A.2d 295, 298 (Pa. Super. Ct. 1992)—is a "misfit" that we cannot follow. *Lupu v. Loan City, LLC*, 903 F.3d 382, 391–92 (3d Cir. 2018). Commerce's duty to defend therefore couldn't have arisen until Daniel filed her second complaint.

Determining precisely when Commerce's duty to defend Lind arose, though, is best left for the district court to resolve on remand. As Century notes, it may raise "a whole new set of tender issues." Appellee Br. at 36. Regardless, when splitting the bill, Century must be left with the costs it incurred for Lind's defense before Commerce's duty to defend arose; for costs after that point, Commerce pays.

### III.

For these reasons, we **AFFIRM** the judgment with respect to Weston's defense costs. We **VACATE** the judgment with respect to Lind's defense costs, and **REMAND** for further proceedings.